[Cite as *Gingrich v. Otter Fork Equestrian Complex, L.L.C.*, 2024-Ohio-2775.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| LORI J. GINGRICH | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| OTTER FORK EQUESTRIAN | : | Case No. 23 CA 00086 |
| COMPLEX, LLC | : | |
| | : | |
| Defendant-Cross-Claim Plaintiff- | : | |
| Appellee | : | |
| | : | |
| and | : | |
| | : | |
| TERA GORE, ET AL. | : | |
| | : | |
| Defendants-Cross-Claim | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 2022 CV 00785


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      July 22, 2024


APPEARANCES:

For Appellants Gore                            For Appellee Otter Fork

JOSHUA J. BROWN                         BARTON R. KEYES
3979 Main Street                            JONATHAN N. BOND
Hilliard, OH  43026                      COOPER ELLIOT
                                                 305 West Nationwide Boulevard
                                                 Columbus, OH  43215

*King, J.*

{¶ 1}   Defendants-Cross-Claim Defendants-Appellants, Tera Gore, William Gore, and Irongate Events and Catering, Inc., appeal the December 4, 2023 judgment entry of the Court of Common Pleas of Licking County, Ohio, granting judgment on the pleadings to Defendant-Cross-Claim Plaintiff-Appellee, Otter Fork Equestrian Complex, LLC ("Otter Fork").  Plaintiff in the case is Lori J. Gingrich.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 11, 2018, Gingrich filed a complaint against G & G Feed & Supply alleging an intentional tort (Case No. 2018 CV 00410).  Gingrich worked for G & G which was owned and operated by Tera Gore.  An amended complaint was filed on April 13, 2018, to add as party defendants Gore and other entities owned and/or used by Gore: "Global Vision Alliance, Inc. c/o Tera Gore, statutory agent" and "Irongate Equestrian Center."  The amended complaint alleged on April 15, 2016, Gore intentionally struck Gingrich with a heavy metal clipboard causing her to sustain serious injuries.

{¶ 3}   Because defendants failed to answer, Gingrich was granted default judgment on July 26, 2018.  A damages hearing was held on August 27, 2018.  Defendants did not appear.  By entry filed September 7, 2018, the trial court awarded Gingrich $953,578.75 as against defendants.

{¶ 4}   On September 27, 2018, defendants filed a Civ.R. 60(B) motion for relief from judgment.  By decision and order filed January 15, 2019, the trial court granted the motion.  The decision was reversed on appeal.  *Gingrich v. G & G Feed & Supply, LLC,* 2019-Ohio-4779 (5th Dist.).

{¶ 5}   Upon remand, the trial court reinstated the default judgment and damages award, and granted post-judgment interest.  Judgment Entry filed January 30, 2021.

{¶ 6}   At some point in her collection efforts, Gingrich learned "Irongate Equestrian Center" was the registered tradename for Otter Fork.  Gingrich filed a praecipe for a certificate of judgment in the name of "Otter Fork Equestrian Complex, LLC T/A Irongate Equestrian Center" with the Licking County Clerk of Courts on March 27, 2020.  The clerk issued a certificate of judgment listing Otter Fork as a judgment debtor (Case No. 2020 JD 198166).

{¶ 7}   Thereafter, the attorney for Otter Fork contacted the Licking County Clerk's Office and instructed the clerk to amend the certificate of judgment to remove Otter Fork as a judgment debtor.

{¶ 8}   On February 22, 2021, Gingrich filed a motion to correct the record, requesting the trial court amend and correct the record, including the judgment entry, docket, and certificate of judgment, to reflect the legal name of Irongate, to wit: Otter Fork.

{¶ 9}   On March 11, 2021, Irongate/Otter Fork filed a motion to vacate the default judgment and dismiss all claims against it.

{¶ 10} By order filed July 8, 2021, the trial court denied Gingrich's motion to correct the record.  The decision was reversed on appeal.  *Gingrich v. G & G Feed & Supply, LLC,* 2022-Ohio-982 (5th Dist.).  This court found the judgment against Irongate is enforceable against Otter Fork.  The court reasoned Otter Fork "persisted in using the trade name to protect the sui juris entity" and Otter Fork knew its rights could be affected by the action; it could not now claim foul to avoid the judgment.  *Id.* at ¶ 24.

{¶ 11} Upon remand, the trial court amended the record and the certificate of judgment to reflect judgment against both names, "Irongate Equestrian Center" and "Otter Fork Equestrian Complex, LLC."  Order filed April 22, 2022.

{¶ 12} On July 20, 2022, Gingrich filed the underlying case here, a foreclosure action, naming numerous defendants including the cross-claimants in this appeal.[1]  The property Gingrich sought to foreclose on was owned by Otter Fork and was being sold to appellants Tera Gore and Irongate Events & Catering, Inc. under a land contract.  The parties had first entered a land contract in 2015 and made several amendments and novations, ending with the land contract at issue, which is dated 2021.  The 2021 land contract contained an indemnity clause and specifically mentioned the judgment in the Gingrich case.  Gore was required to pay and/or perform certain acts depending on whether the judgment was vacated or upheld.  The contract also contained a default clause.

{¶ 13} While the foreclosure action was proceeding, motions were filed in the original intentional tort case.  In that original case, the trial court denied the motion to vacate the default judgment and dismiss the claims against Irongate/Otter Fox.  Order filed October 20, 2022.  Irongate/Otter Fork appealed, but on February 6, 2023, the appeal was voluntarily dismissed.

{¶ 14} On April 14, 2023, in the foreclosure action, Otter Fork filed an answer and a declaratory judgment cross-claim against appellants for a determination as to the rights of the parties under the 2021 land contract.  On April 24, 2023, appellants filed a

---

[1]To avoid any confusion, we note one of the defendants listed is "Irongate Events and Catering Inc." in care of Tera L. Gore, which is a separate entity than "Otter Fork Equestrian Complex, LLC T/A Irongate Equestrian Center."

declaratory judgment cross-claim against Otter Fork for a determination of a lack of consideration under the 2021 land contract and a determination of their equity in the property based upon payments made. On June 6, 2023, Otter Fork filed a motion for judgment on the pleadings on the cross-claims.

{¶ 15} On August 11, 2023, Gingrich filed a motion for summary judgment and decree in foreclosure.

{¶ 16} Because Gore defaulted under the land contract, Otter Fork filed in the municipal court a forcible entry and detainer action (Case No. 22 CVG 1282). The case was transferred to the common pleas court (Case No. 23CV01010) and was consolidated with the underlying foreclosure case. Order filed September 19, 2023.

{¶ 17} Otter Fork paid the damages award to Gingrich and Gingrich dismissed her foreclosure claims; the cross-claims remained. Agreed Entry of Partial Dismissal filed October 31, 2023.

{¶ 18} By judgment entry filed December 4, 2023, the trial court granted Otter Fork's motion for judgment on the pleadings as to the cross-claims, finding appellants defaulted under the terms of the land contract. The trial court did not find a lack of consideration under the 2021 land contract.

{¶ 19} Appellants filed an appeal with the following assignments of error:

I

{¶ 20} "THE TRIAL COURT ERRORED AS A MATTER OF LAW WHEN IT FOUND THAT MERE EXISTENCE OF GINGRICH'S LAWSUIT CONSTITUTED 'ATTACHMENT' UNDER SECTION 8(C) OF THE 2021 DOCUMENT."

II

{¶ 21} "THE TRIAL COURT ERRORED BECAUSE IT DID NOT ANALYZE THE WHOLE CONTRACT, SPECIFICALLY SECTION 8(D) WHICH SHOWS THAT THE CONTRACT WAS FOLLOWED."

III

{¶ 22} "THE TRIAL COURT ERRORED BY FAILING TO RECOGNIZE THAT IT DID NOT HAVE SUBJECT MATTER JURISDICTION UNDER R.C. 5312, BECAUSE THE REVISED CODE SECTION ADDRESSING FORFEITURE AND FORECLOSURE ONLY CONTEMPLATES DEFAULT FOR NON-PAYMENT."

IV

{¶ 23} "THE TRIAL COURT ERRORED BY NOT APPLYING BASIC CONTRACT PRINCIPLES REGARDING BREACH OF CONTRACT TO THE CASE – EVEN IF GORE DEFAULTED, HER BREACH WAS NOT MATERIAL."

V

{¶ 24} "THE TRIAL COURT ERRORED BY RULING THAT A QUESTION OF FACT DID NOT EXIST AS TO CONSIDERATION."

VI

{¶ 25} "THE TRIAL COURT ERRORED WHEN IT FOUND NO QUESTION OF FACT EXISTED AS TO ADEQUACY OF CONSIDERATION."

VII

{¶ 26} "THE TRIAL COURT ERRORED IN FINDING NO QUESTION OF FACT CONCERNING UNCONSCIONABILITY."

VIII

{¶ 27} "THE TRIAL COURT ERRORED IN FINDING THAT THE 2021 DOCUMENT WAS A VALID LAND CONTRACT, BECAUSE THE MINIMUM REQUIREMENTS WERE NOT FOLLOWED PURSUANT TO R.C. 5313.02(C)."

*Standard of Review*

{¶ 28} Civ.R. 12(C) governs judgment on the pleadings and states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Under the rule, "dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). The rule allows the court to consider both the complaint and the answer and any attached materials to the pleadings. *Crenshaw v. Howard,* 2022-Ohio-3914, ¶ 13 (8th Dist.). Civ.R. 12(C) motions are specifically for resolving questions of law; therefore, the rule requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law. *Peterson v. Teodosio,* 34 Ohio St.2d 161, 165-166 (1973).

{¶ 29} The appellate standard of review on a Civ.R. 12(C) motion is de novo. *Columbus v. Sanders*, 2012-Ohio-1514 (5th Dist.). Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Kramer v. Installations Unlimited, Inc.*, 147 Ohio App.3d 350 (5th Dist. 2002). A de novo review requires an independent review of

the trial court's decision without any deference to the trial court's determination. *Brown v. Scioto County Board of Commissioners*, 87 Ohio App.3d 704, 711 (4th Dist. 1993).

I, II

{¶ 30} In their first assignment of error, appellants claim the trial court erred in finding the mere existence of the Gingrich lawsuit constituted an attachment under the contract.

{¶ 31} In their second assignment of error, appellants claim the trial court erred in not analyzing the whole contract, specifically Section 8(d).

{¶ 32} In its motion for judgment on the pleadings filed June 6, 2023, Otter Fork sought judgment on its cross-claim against appellants and on appellants' cross-claim against Otter Fork. Otter Fork based its motion on appellants' default under the terms of the 2021 land contract and R.C. Ch. 5313 which governs land installment contract.[2]

{¶ 33} The original land contract was signed in 2015 between Tera Gore as buyer and Otter Fork as seller. *See* Exhibit A, attached to June 6, 2023 Motion for Judgment on the Pleadings. The contract underwent four revisions, in 2017, 2018, 2019, and 2021.

{¶ 34} The 2017 land contract modified the payment terms; the buyer and seller remained the same. *See* Exhibit B, attached to June 6, 2023 Motion for Judgment on the Pleadings.

{¶ 35} Because Tera Gore assigned her interest in the land contract to "Irongate Events & Catering, Inc." in April of 2018, the 2018 land contract changed the buyer to Irongate Events & Catering, Inc. *See* Exhibit C, attached to June 6, 2023 Motion for Judgment on the Pleadings.

---

[2]All of the materials cited by Otter Fork were attached to the pleadings for review.

{¶ 36} The 2019 land contract contained a novation and replaced and voided the original 2015 agreement and all subsequent addendums. This contract was entered into by Irongate Events & Catering, Inc. as buyer, signed by Tera Gore, President, and Otter Fork as seller. *See* Exhibit D, attached to June 6, 2023 Motion for Judgment on the Pleadings.

{¶ 37} The 2021 land contract also contained a novation, and was between Tera Gore and Irongate Events & Catering, Inc., collectively and jointly and severally as buyer, and Otter Fork as seller; it was signed by Tera Gore, individually, Irongate Events & Catering, Inc. by Tera Gore, President, and Otter Fork. *See* Exhibit E, attached to June 6, 2023 Motion for Judgment on the Pleadings. In its motion, Otter Fork cites to the following provision under Section 8, <u>Alterations and Liens</u>:

(d) Buyer agrees and acknowledges that Tera L. Gore; G&G Feed & Supply, LLC; Global Vision Alliance, Inc.; and IronGate Equestrian Center are currently judgment debtors by virtue of a judgment (the "Judgment") arising out of Case Number 18 CV 00410, Licking County, Ohio Court of Common Pleas (the "Litigation"). Buyer further acknowledges that IronGate is a registered trade name owned by Seller. Buyer further acknowledges that Seller had no part, role or responsibility for the events which gave rise to the Judgment. Buyer further acknowledges that the judgment creditor in the Litigation is seeking to perfect a judgment lien on and against the Premises. The Seller is actively seeking to vacate the Judgment and limit the judgment creditor's ability to perfect a judgment lien against the

Premises.  Upon the conclusion of the Litigation and any appeals thereof, which determination shall be made at the sole discretion of the Seller, Seller shall advise the Buyer of the amount of attorneys' fees and expenses which it incurred in protecting its interest in the Premises.  At Seller's sole determination, Buyer shall either 1) pay the attorneys' fees and expenses in full to Seller within 15 days of the receipt of notice thereof; or 2) add the fees and expenses to the principal balance due under this Contract and pay the same in accordance with the terms and conditions hereof.  In the event that Seller is not successful in vacating the Judgment and/or limiting the judgment creditor's ability to perfect a judgment lien against the Premises, Buyer shall remove, obtain the release of, or bond off any such judgment lien or encumbrance within thirty (30) days after written notice by Seller, and if Buyer shall fail to do so, Seller may, in its sole discretion, pay the amount necessary to remove such lien or encumbrance.  The amount so paid shall be payable upon demand by Seller, or added to the principal balance due under this Contract and shall be paid by Buyer in accordance with the terms hereof, without limitation as to other remedies available to Seller under this Contract.  In the event that any such amounts are added to the principal balance due under this Contract, the monthly principal and interest payment shall be adjusted accordingly, and the Seller shall provide Buyer with the revised payment amount and a revised amortization schedule.  In no event shall the recordation of a judgment lien arising out of the Litigation be deemed an event of default on the part of Seller.

{¶ 38} Under Section 15, <u>Buyer's Default</u>, buyer is in default giving rise to seller's remedies if: "(c) Buyer fails to observe or perform any other provision, covenant or condition required of Buyer under this Contract within (30) days after Seller gives written notice to Buyer of such failure." The section concludes: "In any such events, Seller may, upon notice to Buyer as required by law, initiate proceedings for the foreclosure or forfeiture of Buyer's interest in this Contract or the Premises." This same statement is found under <u>Seller's Remedies</u>, Section 16(c). Subsection (a) of Section 16 grants seller the option to terminate the land contract and repossess the premises by forcible entry and detainer suit.

{¶ 39} After the trial court amended the record and the certificate of judgment in the original Gingrich case to reflect judgment against both "Irongate Equestrian Center" and "Otter Fork Equestrian Complex, LLC" (Order filed April 22, 2022), Otter Fork sent a letter to appellants on April 28, 2022. The letter served as a notice under Section 8(d) cited above, demanding that appellants "remove, obtain the release of, or bond off" Gingrich's judgment lien against the property within thirty days of the date of the letter. *See* Exhibit B, attached to Otter Fork's April 14, 2023 Cross-Claim.

{¶ 40} Because appellants failed to remove, obtain the release of, or bond off the judgment lien within thirty days of the April 28, 2022 letter, Otter Fork sent appellants another letter on May 31, 2022. The letter served as notice under R.C. 5313.05 of the risk of forfeiture due to their default in the event they did not pay the money demanded within thirty days of the date of the letter. *See* Exhibit C, attached to Otter Fork's April 14, 2023 Cross-Claim.

{¶ 41} In a letter dated July 1, 2022, Otter Fork notified appellants under R.C. 5313.06 that they were in default under the land contract and either had to pay $1,179,433.19 within ten days or the agreement would be forfeited.  *See* Exhibit D, attached to Otter Fork's April 14, 2023 Cross-Claim.

{¶ 42} Appellants failed to pay and Otter Fork paid the damages award to Gingrich in exchange for the dismissal of her foreclosure claim.  *See* Agreed Entry of Partial Dismissal filed October 31, 2023.

{¶ 43} In their motion for judgment on the pleadings, Otter Fork claimed appellants forfeited their interest in the property on July 11, 2022.  Otter Fork sought forfeiture under R.C. 5313.08 because the 2021 land contract between the parties had been "in effect for less than five years."  Under the statute, Otter Fork could bring an action for forfeiture of appellants' rights under the land contract and for restitution of the property.  There is no dispute that Otter Fork complied with the notice requirements of R.C. 5313.05 and 5313.06.

{¶ 44} In granting Otter Fork's motion for judgment on the pleadings, the trial court cited Section 15(f) under Buyer's Default as an occurring event that constituted default: "The interest of Buyer [appellants] in the Premises is attached, levied upon, or seized by legal process.  The trial court found "[t]he existence of Gingrich's lawsuit, which is an attachment of Gore's interest, constitutes a default by Gore."  December 4, 2023 Judgment Entry at 9.  Appellants argue the trial court's statement is wrong because the "mere filing of a lawsuit cannot constitute 'attachment' and the trial court did not analyze the whole contract."  Appellants' Brief at 10.  Appellants argue extensively about the legal meaning of "attachment."

{¶ 45} Regardless of the "attachment" analysis, this court has independent de novo review and agrees with Otter Fork's analysis of the land contract. Appellants agreed to the 2021 terms under Section 8(d) specifically addressing the Gingrich judgment. Appellants gave Otter Fork the right to demand that they remove, obtain the release of, or bond off the judgment lien in the event Otter Fork was not successful in vacating the judgment *and/or* limiting Gingrich's ability to perfect a judgment lien against the property. At the time of the first default letter dated April 28, 2022, the trial court had just amended Gingrich's judgment to reflect judgment against Otter Fork. Although Otter Fork was still fighting to vacate the judgment, it was not successful in limiting Gingrich's ability to perfect her judgment lien, and the conjunctive language emphasized above gave Otter Fork the option to pursue its demand. In addition, the terms of Section 8(d) did not limit Otter Fork as to other remedies elsewhere, such as Sections 15(c) and 16(a) and (c) discussed above.

{¶ 46} Appellants argue "Gore attempted to reimburse Otter Fork for the payment of the judgment immediately. This offer was made on the record in this case, with the check in-hand. (Hr'g., Jan. 2, 2024.)." Appellants' Brief at 20. Based on the notices sent by Otter Fork, appellants were to have paid by July 11, 2022. Their offer of payment in 2024 was untimely and well after the breach occurred.

{¶ 47} Upon review, in construing the material allegations in the cross-claims, with all reasonable inferences to be drawn therefrom, in favor of appellants as true, we find beyond doubt, that appellants could prove no set of facts in support of their claim that would entitle them to relief. We find judgment on the pleadings to Otter Fork is appropriate under the terms of the 2021 land contract.

{¶ 48} Assignments of Error I and II are denied.

III

{¶ 49} In their third assignment of error, appellants claim the trial court erred in finding it had subject matter jurisdiction. We disagree.

{¶ 50} Appellants argue the trial court did not have subject matter jurisdiction to make a determination under R.C. Ch. 5313 because the only type of default contemplated in the chapter is for nonpayment under the land contract and, appellants argue, those statutory remedies are limited to default for nonpayment. Appellants then point out that although the trial court cited sections of R.C. Ch. 5313, the trial court "did not appear to rely on these sections." Appellants' Brief at 20.

{¶ 51} We note in their April 24, 2023 cross-claim at ¶ 5, appellants stated, "[t]his court also has jurisdiction over this matter pursuant to R.C. 5313.07."

{¶ 52} R.C. 5313.05 states when a vendee in a land contract defaults in payment, then forfeiture may be enforced only after the expiration of thirty days from the date of default. We do not read the statute to limit default to nonpayment only. Notice of impending forfeiture under R.C. 5313.06 mandates that a vendor shall serve the vendee with written notice which "specifies the terms and conditions of the contract which have not been complied with" and notifies the vendee that the contract will be forfeited unless the vendee performs the terms and conditions of the contract within time. R.C. 5313.08 states a trial court "may also grant any other claim arising out of the contract." Thus, the language in the statutes contemplates default for reasons other than for nonpayment.

{¶ 53} Upon review, we do not find R.C. Ch. 5313 is limited to nonpayment defaults only; therefore, we do not find a lack of subject matter jurisdiction under R.C. Ch. 5313.

{¶ 54} Assignment of Error III is denied.

IV

{¶ 55} In their fourth assignment of error, appellants claim the trial court erred in not applying basic contract principles regarding contract law.  We disagree.

{¶ 56} Appellants argue their default should be treated as a breach of contract and therefore the basic tenets of breach of contract should apply.  Appellants' Brief at 22. Appellants argue in determining the extent of materiality of the breach, the issue turns on subjective facts.  Further, Otter Fork cannot show any damages for the breach.

{¶ 57} In our review of the pleadings, we do not find any instance where appellants argued materiality and damages under contract law to the trial court.  Whatever merits such arguments may have, here they are irrelevant to whether the motion for judgment on the pleadings was properly granted.

{¶ 58} Assignment of Error IV is denied.

V, VI

{¶ 59} In their fifth and sixth assignments of error, appellants claim the trial court erred in its ruling on the challenged issue of consideration.  We disagree.

{¶ 60} Appellants argue there is a question of fact as to whether there was consideration for the land contracts after the 2015 agreement and whether the consideration was adequate.

{¶ 61} "Consideration is the promise of one party to do something he or she is not obligated to do in exchange for another party's promise to do something in exchange." *Starlion Electronics Distribution, L.L.C. v. Zoran Medical, L.L.C.,* 2023-Ohio-2876, ¶ 21 (8th Dist.).  It is an essential element of contract formation.  *Kostelnik v. Helper,* 2002-

Ohio-2985, ¶ 16. Consideration may consist of either a detriment to the promisee or a benefit to the promisor. *Williams v. Ormsby,* 2012-Ohio-690, ¶ 16, citing *Irwin v. Lombard University,* 56 Ohio St. 9, 19 (1897). A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee. *Id.*

{¶ 62} The Supreme Court of Ohio has recognized the following (*Id.* at ¶ 17):

> We also have a long-established precedent that courts may not inquire into the adequacy of consideration, which is left to the parties as " 'the sole judges of the benefits or advantages to be derived from their contracts.' " *Hotels Statler Co., Inc. v. Safier,* 103 Ohio St. 638, 644–645, 134 N.E. 460 (1921), quoting *Newhall v. Paige,* 10 Gray (76 Mass.) 366, 368 (1858). But whether there is consideration at all is a proper question for a court.

{¶ 63} Otter Fork lists the different terms between the various contracts in great detail. Appellee's Brief at 21-24. The trial court reviewed the various agreements and stated: "Though it is not necessary to recite fully their provisions here, it is clear that each agreement is one in which each party assumes new legal obligations to the other in exchange for the other party's doing the same. This is the very essence of consideration." December 4, 2023 Judgment Entry at 10.

{¶ 64} In addition, the trial court noted the 2021 land contract contained a novation which states:

This contract contains the full understanding and agreement of the parties, and replaces any prior written or oral agreements, leases or land contacts, if any, with the exception of the Bill of Sale Installment Agreement signed on April 10, 2018, which remains in full force and effect. Any subsequent conditions, representations, warranties, or agreements shall not be valid and binding upon the parties unless in writing and signed by both parties.

*See* Exhibit E, attached to June 6, 2023 Motion for Judgment on the Pleadings, Section 21(d).

{¶ 65} "A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by the substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." (Citations omitted.) *McGlothin v. Huffman,* 94 Ohio App.3d 240, 244 (12th Dist. 1994). The novation in this case made the 2021 land contract controlling and gave the parties new benefits and obligations.

{¶ 66} Upon review, we agree with the trial court that there was consideration for the 2021 land contract.

{¶ 67} Assignments of Error V and VI are denied.

VII

{¶ 68} In their seventh assignment of error, appellants claim the trial court erred in finding no question of fact concerning unconscionability.  We disagree.

{¶ 69} As noted by the trial court, appellants did not plead unconscionability as an affirmative defense.  December 4, 2023 Judgment Entry at 10-11.  An affirmative defense must be pled or it is waived.  Civ.R. 8(C); *Law Office of Mona J. Fine v. French,* 2018-Ohio-2256, ¶ 20 (5th Dist.); *Jim's Steak House, Inc. v. City of Cleveland,* 81 Ohio St.3d 18, 20 (1998).

{¶ 70} But the trial court went on to analyze appellants' unconscionability argument as follows:

> Gore's only argument as to unconscionability rests upon her assertion that consideration is not adequate.  Thus, in order to accept her argument, the Court would have to inquire into the adequacy, not only the presence, of consideration.  It cannot do so.  Moreover, the consideration paid to a party is obviously a substantive term of a contract.  It might be relevant to the issue of substantive unconscionability.  However, it establishes no procedural unconscionability in any sense.  Both are needed in order for a contract to be declared unconscionable.

December 4, 2023 Judgment Entry at 10.

{¶ 71} Upon review, we do not find the trial court erred in its determination on unconscionability.

{¶ 72} Assignment of Error VII is denied.

VIII

{¶ 73} In their eighth assignment of error, appellants claim the trial court erred in finding the 2021 agreement was a valid land contract because the minimum requirements of R.C. 5313.02(C) were not met. We disagree.

{¶ 74} R.C. 5313.02(C) states: "Within twenty days after a land installment contract has been signed by both the vendor and the vendee, the vendor shall cause a copy of the contract to be recorded as provided in section 5301.25 of the Revised Code and a copy of the contract to be delivered to the county auditor."

{¶ 75} Appellants argue Otter Fork failed to record the land contract within the twenty-day time period. The 2021 land contract was signed on March 10, 2021, and recorded on April 15, 2022. Otter Fork's April 14, 2023 Cross-Claim at page 3. Appellants did not raise this issue with the trial court until they filed a July 21, 2023 surreply to Otter Fork's July 20, 2023 reply in support of its motion for judgment on the pleadings. Appellants filed a motion for leave to file the surreply brief or in the alternative, motion to amend the pleadings, but there is no ruling on this motion in the record. A trial court's failure to rule on a motion is generally deemed to be a denial of that motion for purposes of appellate review. *Thompson v. Cooper*, 2017-Ohio-5549, ¶ 22 (5th Dist.). Appellants did not raise the issue of invalidity in their trial brief filed November 9, 2023, nor did they attempt to amend their pleadings.

{¶ 76} "Illegality or invalidity of a contract is an affirmative defense that must be set forth in the pleadings or it is waived." *Mitchell v. Thompson,* 2007-Ohio-5362, ¶ 26 (4th Dist.).

{¶ 77}  Upon review, we find appellants waived their claim of invalidity.

{¶ 78}  Assignment of Error VIII is denied.

{¶ 79}  The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By King, J.

Gwin, P.J. and

Wise, J. concur.